UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEK MIRKO MASON and
ELENA YANCHEVA YANEVA,

Plaintiffs,

v.

THOMAS ROGER LAWRENCE;
THOMAS LAWRENCE
ENTERPRISES, INC.;
CONSTRUCTION RESOURCE
ADVISORS, LLC; JOEL DANIEL
SLATON; JOEL SLATON
ENTERPRISES, INC.,

Defendants.
_______________________________________/

CASE NO. 2:26-cv-01976-SPC-NPM

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants Thomas Roger Lawrence ("**Lawrence**"); Thomas Lawrence Enterprises, Inc. ("**TLE**"); Construction Resource Advisors, LLC ("**CRA**"); Joel Daniel Slaton ("**Slaton**"); and Joel Slaton Enterprises, Inc. ("**JSE**") (collectively, "**Defendants**"), by and through their undersigned attorneys, hereby move to dismiss Plaintiffs' First Amended Complaint ("**FAC**") (Doc. 43), filed by Plaintiffs Alek Mirko Mason ("**Mason**") and Elena Yancheva Yaneva ("**Yaneva**") (collectively, "**Plaintiffs**"), pursuant to Federal Rules of Civil Procedure 8(a)(2), 10(b), and 12(b)(6), and say:

## I. INTRODUCTION

This case arises from a straightforward construction business acquisition deal. Plaintiffs' sprawling 91-page, 11-count FAC seeks over $30 million in damages from five Defendants based on what is, at most, a two-party asset purchase that resulted in deflated expectations. The FAC asserts claims for (I) Fraudulent Inducement; (II) Fraudulent Misrepresentation and Fraudulent Concealment; (III) Conversion; (IV) Breach of Asset Purchase Agreement and Related Transaction Obligations; (V) Breach of Independent Contractor Agreement; (VI) Tortious Interference with Existing and Prospective Business Relationships; (VII) Civil Conspiracy; (VIII) Civil RICO; (IX) RICO Conspiracy; (X) Civil RICO – Use or Investment of Racketeering Income; and (XI) Accounting, Constructive Trust, Disgorgement, and Equitable Relief. Every one of these claims fails and should be dismissed for the following reasons:

First, the FAC is and remains a shotgun pleading. It systematically lumps all five Defendants together without specifying which Defendant performed which act, and it incorporates massive blocks of paragraphs into each count. This is Plaintiffs' second attempt, and the Eleventh Circuit requires only one chance to cure.

Second, neither Plaintiff has standing. Mason does not establish that he is the "Aleksandar Musulin" who signed the Asset Purchase Agreement, and Yaneva concedes she is not a party to any transaction document.

Third, the fraud claims fail Federal Rule of Civil Procedure 9(b)'s heightened particularity requirement because they do not specify which Defendant is responsible for specific acts.

Fourth, Plaintiffs' fraud claims and the APA contract claim fail to the extent that they conflict with the express terms of the APA.

Fifth, the RICO counts fail because Plaintiffs do not plead a distinct enterprise or a pattern of racketeering.

Sixth, the APA's damages limitations preclude the relief sought.

Seventh, Count XI fails to state an independent claim for relief.

For these reasons, the FAC should be dismissed with prejudice.

## II. BACKGROUND

### A. <u>Procedural History</u>

Plaintiffs originally filed this action on December 29, 2025, in the Southern District of Texas, Case No. 4:25-cv-06310. (Doc. 1.) On January 21, 2026, Defendants filed a Motion to Dismiss or Transfer Venue. (Doc. 12.) On May 21, 2026, the Southern District of Texas granted transfer to this Court pursuant to 28 U.S.C. § 1404(a), finding that a contractual forum-selection clause was valid and enforceable. (Doc. 26, effective June 11, 2026.)

On June 16, 2026, this Court sua sponte dismissed the original complaint as a shotgun pleading, citing the Eleventh Circuit's clear directive that district courts must identify shotgun pleadings and order repleading. (Doc. 37.) The Court gave Plaintiffs "one chance" to remedy the shotgun pleading. (Doc. 37 at 2–3.) Plaintiffs filed the FAC on June 29, 2026. (Doc. 43.)

### B. The Transaction

The underlying transaction is straightforward. In December 2024, Thomas Lawrence Construction LLC ("**TLC**") and buyer principal Aleksandar Musulin ("**Musulin**") purchased the assets of a small, local construction company named "Thomas Lawrence Enterprises" through an Asset Purchase Agreement ("**APA**"). (Doc. 1-2, Ex. A.) The purchase price was $1,016,000. (Id. at § 1.2.) TLE operated under Lawrence's personal contractor license and, as indicated by the company's name, its customer relationships were, by Plaintiffs' own account, rooted in Lawrence's personal involvement and social connections. (See doc. 43, ¶¶ 43–48.) Yet, Plaintiffs claim they were deceived about the "personal nature" of the business's goodwill (id. at ¶¶ 13, 43–48), even though the APA transferred the assets "AS IS" (Doc. 1-2, Ex. A, § 4.5) and the diligence materials Plaintiffs received disclosed that Lawrence was "very active in the business in all capacities" (Doc. 1-2, Ex. B, 13).

Defendant Slaton also separately contracted with TLC under a separate Independent Contractor Agreement ("**ICA**") to provide post-Closing services. (Doc. 1-2, Ex. C.) In advance of the sale, a Confidential Information Memorandum ("**CIM**") was also provided to Plaintiffs by Defendants' broker to provide Plaintiffs with data and information relevant to the business. (Doc. 1-2, Ex. B.)

## MEMORANDUM OF LAW

## I. LEGAL STANDARDS

### A. Pleading Standard

To properly allege a claim, plaintiffs must meet certain threshold pleading requirements. Under Rule 8(a)(2), a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Under this standard, the plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Id. (quoting Twombly, 550 U.S. at 557).

Further, Rule 10(b) requires that the complaint delineate the counts presented. Fed. R. Civ. P. 10(b). Judge Tjoflat of the U.S. Court of Appeals for the Eleventh Circuit long ago explained the purpose of these pleading rules:

> The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules.

Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n. 14 (11th Cir. 1985) (Tjoflat, J., dissenting)).

**B. Standing Standard**

Standing under Article III has three elements: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Florida Family Policy Council v. Freeman, 561 F.3d 1246, 1253 (11th Cir. 2009).

**C. Standard for Dismissal under Rule 12(b)(6)**

Under Rule 12(b)(6), a complaint is subject to dismissal if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[W]hen on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate." Burgess v. Hogue, No. 8:07-CIV-1612-17-TGW, 2008 WL 906726, at *1 (M.D. Fla. April 3, 2008).

"Court[s] may consider additional documents where Plaintiff refers to the document in the complaint, the document is central to Plaintiff's claim, the authenticity of the document is not in dispute, and Defendant attaches the document to the motion to dismiss." Ranbaxy Labs., Inc. v. First Databank, Inc., No. 3:13-CV-859-J-32MCR, 2014 WL 982742, at *4 (M.D. Fla. Mar. 12, 2014). Here, the APA, ICA, CIM, and related transaction documents are referenced throughout the FAC, are central to Plaintiffs' claims, and were filed at ECF No. 1-2. The Court may and should consider them in evaluating this motion.

## II. ARGUMENT

### A. The FAC remains an improper shotgun pleading.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland, 792 F.3d at 1320. Shotgun pleadings "fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323. The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) a complaint with multiple counts in which each count "adopts the allegations of all preceding counts;" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that fails to separate each cause of action or claim for relief; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1321-23.

This Court held that the original complaint was a shotgun pleading because "[i]n each count, Plaintiffs reallege and incorporate by reference all preceding paragraphs 'as if fully set forth herein.'" (Doc. 37, at 2.) As this Court explained in the Opinion and Order, "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings." (Doc. 37, at 2); see also Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). In the Opinion and Order, the Court explained that "the Eleventh Circuit requires district courts to allow a litigant one chance to remedy such deficiencies . . . This is Plaintiffs' chance." (Doc. 37, at 2.)

Despite the Court's Order, the FAC remains an impermissible shotgun pleading. Indeed, it is worse than the original complaint.

**i. The FAC is a shotgun pleading because it asserts multiple claims against the Defendants without specifying which Defendant is responsible for which act.**

The FAC is a shotgun pleading because it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1323.

The FAC systematically lumps all Defendants together, alleging misconduct by "Defendant Lawrence, Defendant TLE, Defendant Slaton, and Defendant JSE" as a collective unit without differentiating which specific Defendant performed which specific act. This pattern pervades the complaint. (See, e.g., Doc. 43, ¶¶ 13, 29, 45, 78–79, 121–22, 127, 129, 134, 136.) The FAC particularly treats the Defendants as interchangeable actors in the operative paragraphs of Counts I, II, and III. (Id. at ¶¶

121–22; 127–28; 134.) In addition, the Damages and Causation section is incorporated into every count, making it impossible to determine which damages flow from which Defendant's specific conduct. (Id. at ¶¶ 111–19, 120, 126, 132, 138, 144, 150, 156, 162, 173, 180, 185.) The five Defendants are distinct individuals and legal entities with separate roles in the underlying transaction. Plaintiffs impermissibly conflate them. Thus, the FAC should be dismissed with prejudice.

**ii. The FAC is a shotgun pleading because the claims still adopt the allegations of the preceding counts.**

Plaintiffs attempted to address the Court's prior ruling by selectively incorporating paragraphs into each count. This fix is cosmetic. Each count still incorporates massive blocks of paragraphs. Counts II, VII, VIII, and IX, for example, incorporate paragraphs 1–31, 37–110, and 111–119, approximately 100+ paragraphs encompassing nearly the entirety of the complaint's factual allegations. (Id. at ¶¶ 126, 156, 162, 173.) Count IV incorporates paragraphs 1–31, 37–98, and 111–119; Count V incorporates paragraphs 1–31, 59–110, and 111–119; Count X incorporates paragraphs 1–22, 43–110, and 111–119; and Count XI incorporates paragraphs 1–31, 43–110, and 111–119; also encompassing nearly the entirety of the complaint's factual allegations. (Id. at ¶¶ 138, 144, 180, 185.) When a single count incorporates the vast majority of the complaint's factual allegations, the "selective" incorporation is functionally equivalent to blanket incorporation. See, e.g., Clifford v. Federman, No. 1:18-CV-01953-JPB, 2020 WL 377026 (N.D. Ga. Jan. 7, 2020), aff'd, 855 Fed. Appx. 525 (11th Cir. 2021) ("While Plaintiffs did not technically incorporate all 312 factual

paragraphs into each count, the vast majority of the fifty-two counts contained within the FAC incorporate the entirety of the section entitled 'The Facts,' which consists of almost 250 paragraphs and spans 104 pages.").

Defendants still cannot discern which factual allegations support which legal claim. These massive incorporation ranges sweep in extended narratives wholly unconnected to the specific elements of the cause of action in the count that incorporates them, including, among other things: Plaintiff Yaneva's Stage IV melanoma history (Doc. 43, ¶ 112(C)); Plaintiff Mason's credit score trajectory (Id. at ¶ 112(B)); the O*NET definition of "General Manager" (Id. at ¶ 26); Lawrence's membership on a neighborhood HOA Architectural Review Board (Id. at ¶ 48); monthly debt-service calculations (Id. at ¶¶ 75(A)-(B)); and detailed accounts of neighborhood socializing (Id. at ¶ 56). None of these are connected to elements of the specific counts brought against Defendants.

The test is not whether Plaintiffs used specific paragraph references, rather it is whether the result enables Defendants to understand what claims are asserted against them and what factual basis supports each claim. See Weiland, 792 F.3d at 1323. Incorporating 100+ paragraphs into a single count, many of which have nothing to do with the elements of that cause of action, fails this test. Accordingly, the FAC should be dismissed with prejudice as a shotgun pleading.

**B. Both Plaintiffs lack standing.**

Assuming arguendo the FAC were not a shotgun pleading, it should be dismissed because both Plaintiffs lack standing to bring the claims asserted.

**i. Mason did not establish that he was a party to the APA.**

The APA identifies the "Buyer Principal" as Aleksandar Musulin. (Doc. 1-2, Ex. A, 1.) Musulin also signed the APA as Buyer Principal and the manager of TLC. (Id. at 26.) Yet this lawsuit was filed by Alek Mirko Mason. The FAC does not allege that Alek Mirko Mason and Aleksandar Musulin are one and the same person. It does not allege a legal name change or an assignment of rights from Musulin to Mason. This is not a mere technicality. It is a threshold deficiency. See In re Brinker Data Incident Litig., No. 3:18-CV-686-J-32MCR, 2020 WL 4287270, at *4 (M.D. Fla. July 27, 2020) ("Article III standing, as its name implies, is a constitutional requirement to bring any claim in federal court.").

If Mason is not Musulin, then Mason has no standing to enforce the APA, and every claim premised on Mason's rights as the buyer under the APA must be dismissed. The failure to establish that the named Plaintiff is the contracting party defeats standing as to all contract-based and fraud-based claims. See In re Mednax Services, Inc., Customer Data Sec. Breach Litig., 603 F. Supp. 3d 1183, 1228 (S.D. Fla. 2022) (providing that a "plaintiff must allege privity of contract with a defendant to establish standing in contract cases"); Blue Supply Corp. v. Novos Electro Mechanical, Inc., 990 So.2d 1157, 1159 (Fla. 3rd DCA 2008) (dismissing fraud claims arising out of contract properly dismissed where the evidence showed defendant was not party to the underlying contract at issue).

**ii. Yaneva does not have standing to assert any claim in this action.**

The FAC concedes that Yaneva "did not acquire the Purchased Assets, was not the purchaser under the APA, was not a member or owner of TLC, and does not plead claims based merely on ownership of TLC, purchaser status, or derivative injury through Plaintiff Mason." (Doc. 43, ¶ 7.) Yaneva is not a party to the APA, the ICA, or any other transaction document. She has no contractual relationship with any Defendant.

As a threshold matter, the FAC does not clearly identify which Plaintiff is asserting which count. Five counts use "Plaintiff Mason incorporates" as the incorporation language: Count I (¶ 120), Count III (¶ 132), Count IV (¶ 138), Count V (¶ 144), and Count VI (¶ 150). Six counts use "Plaintiffs incorporate": Count II (¶ 126), Count VII (¶ 156), Count VIII (¶ 162), Count IX (¶ 173), Count X (¶ 180), and Count XI (¶ 185). No count affirmatively states which claims Yaneva is or is not asserting.

Yaneva's claim to standing rests entirely on allegations of "direct personal injuries," specifically, "direct financial harm, loss of time, unpaid labor, household financial disruption, stress, marital and household strain, and litigation burden . . . including stress and disruption imposed on a stage IV cancer survivor in remission." (Doc. 43, ¶¶ 7, 112(C).) As explained below, these alleged injuries do not confer standing to pursue the claims asserted in the FAC.

Despite the ambiguous nature of the claims, Defendants will address why Yaneva lacks standing for each claim:

- **Fraud Claims (Counts I and II):** Under Florida law, the elements of fraudulent inducement are (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation. Levenger Co. v. Feldman, 516 F. Supp. 2d 1272, 1290 (S.D. Fla. 2007). Similarly, the elements of fraudulent misrepresentation are (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. In re Palm Beach Fin. Partners, L.P., 517 B.R. 310, 336 (Bankr. S.D. Fla. 2013). A claim for fraudulent concealment has the following four elements: (1) a misrepresentation of material fact or suppression of the truth; (2) [a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. Vital Pharm., Inc. v. Balboa Capital Corp., No. 14-62469-CIV, 2016 WL 4479370, at *7 (S.D. Fla. Aug. 25, 2016), aff'd, 806 Fed. Appx. 884 (11th Cir. 2020).

Yaneva does not allege that any Defendant made any representation to her personally, that she relied on any representation in entering any transaction, or that

she was a party to any agreement. The fraud claims are premised on misrepresentations allegedly made in connection with the APA, a contract to which Yaneva is a stranger. *See Blue Supply Corp.*, 990 So.2d at 1159 (dismissing fraud claims arising out of contract properly dismissed where the evidence showed defendant was not party to the underlying contract at issue). Accordingly, Yaneva lacks standing to bring these claims.

- **Conversion (Count III):** Conversion requires a right to possession of the converted property. *Tranquil Blue Corp. v. Shuhart*, No. 8:16-CV-1217-T-30TBM, 2017 WL 2812667, at *5 (M.D. Fla. June 29, 2017). Yaneva concedes she has no ownership interest in TLC or the Purchased Assets. (*See* doc. 43, ¶ 7.) She has no possessory right to any funds allegedly diverted. Accordingly, Yaneva again lacks standing.

- **Contract Claims (Counts IV and V):** Count IV brings a claim for breach of the APA. Yaneva is not a party to the APA. She cannot assert breach of a contract to which she is not a party. *See In re Mednax Services*, 603 F. Supp. 3d at 1228 (providing that a "plaintiff must allege privity of contract with a defendant to establish standing in contract cases"). Moreover, the APA expressly forecloses third-party beneficiary claims. Section 11.6 provides:

> The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the Parties hereto and, in the case of Article 8 hereof, the Buyer Indemnified Persons and the Seller Indemnified Parties, and their successors and assigns, and they will not be construed as conferring any rights on any other persons.

(Doc. 1-2, Ex. A, § 11.6.) This section forecloses Yaneva's standing on its face. Even if Yaneva believed she would benefit from the APA, the contract's own terms provide that its provisions "will not be construed as conferring any rights on any other persons." (Id.)

Count V brings a claim for breach of the ICA. Yaneva is not a party to the ICA. The ICA is between TLC and Slaton/JSE. Again, Yaneva lacks standing.

- **Tortious Interference Claim (Count VI):** To prevail on a tortious interference claim, a plaintiff must show: (1) the existence of a business relationship; (2) the defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result. Alphamed Pharm. Corp. v. Arriva Pharm., Inc., 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005). The FAC does not allege any business relationship involving Yaneva. To the contrary, the FAC alleges that "Plaintiff Mason . . . had existing and prospective business relationships," not Yaneva. (Doc. 43, ¶ 151.) Accordingly, Yaneva lacks standing to bring this claim.

- **Civil Conspiracy (Count VII):** "An action for civil conspiracy must be premised on an underlying tort or cause of action." U.S. ex rel. Crenshaw v. Degayner, 622 F. Supp. 2d 1258, 1284 (M.D. Fla. 2008). The FAC does not allege that Yaneva was the target of an independent tortious act apart from the transaction-based claims she asserts. Therefore, Yaneva lacks standing to bring this claim.

- **RICO Claims (Counts VIII, IX, and X):** A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation" of RICO. *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1337 (S.D. Fla. 2001). Yaneva concedes she has no ownership interest in TLC or the Purchased Assets. (*See* doc. 43, ¶ 7.) Therefore, she has not been injured in her "business or property" and has no standing under the RICO claims.

- **Accounting, Constructive Trust, Disgorgement, and Equitable Relief (Count XI):** As explained below, this count is improperly pled and therefore Yaneva's standing to bring the claim is irrelevant. *See infra* Section II(F). Regardless, Yaneva has failed to articulate how she has standing to seek the relief sought.

**C. Plaintiffs' fraud claims (Counts I and II) fail because they are not pled with particularity and conflict with express terms of the APA.**

**i. The fraud claims are not pled with particularity.**

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Eleventh Circuit has stated:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). The fraud claims fail this heightened standard because the fraud counts fail to identify

which Defendant made which alleged statement. In Count I, Plaintiffs generally allege that "Defendant Lawrence, Defendant TLE, Defendant Slaton, and Defendant JSE, directly or through agents" made certain statements. (Doc. 43, ¶ 121.) Count II alleges that "Defendants made material misrepresentations and concealed material facts" concerning various business items. (Id. at ¶ 127.) Neither count specifies who made the statement, precisely what the statement was, or the time and place of each statement.

Where the complaint does attempt specificity, it often attributes statements to only Lawrence (*see id.* at ¶¶ 16(A), 23, 25–27, 49) or to Lawrence and Slaton together (*see id.* at ¶¶ 37, 39). But the counts themselves lump the Defendants into the same allegations without explaining who was responsible for what statement. This is improper. *See Altimas v. Whitney*, No. 209CV682FTM36SPC, 2010 WL 11507317, at *2 (M.D. Fla. Dec. 9, 2010) ("When fraud-based claims are levied against multiple defendants, such claims should inform each defendant as to the nature of his alleged participation in the fraud."). Accordingly, the fraud claims should be dismissed.

**D. Plaintiffs' fraud claims (Counts I and II) and the APA contract claim (Count IV) fail to the extent that they conflict with the express terms of the APA.**

The fraud claims and the breach of APA claim also fail because Section 4.5 of the APA provides that Mason acknowledged that the assets were transferred "**without any representations or warranty of any nature whatsoever**, express or implied, statutory or otherwise, **oral or written**," and acknowledged having "**had the**

**opportunity to inspect the Acquired Assets** and conduct due diligence" and having been "**provided adequate access to the Acquired Assets** and records." (Doc. 1-2, Ex. A, § 4.5) (emphasis added). Additionally, Mason represented at closing that he had "no knowledge of any breach of any representation or warranty of" the sellers. (Id. at § 4.6.) The APA further provides it "**constitute[s] the entire agreement and understanding**" among the parties and "**supersede[s] any prior agreement and understanding relating to the subject matter**." (Emphasis added) (Id. at § 11.8.)

"[A] merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms." Jenkins v. Eckerd Corp., 913 So. 2d 43, 53 (Fla. 1st DCA 2005). Accordingly, the FAC's core fraud and breach of contract allegations—retirement plans, customer-pipeline volume, Slaton's licensing timeline, business continuity representations—are all oral statements that appear nowhere in the APA. (See, e.g., doc. 43, ¶¶ 9, 10, 14, 28, 32(D), 35.) Further, Plaintiffs' allegations about pre-closing statements, alleged misrepresentations about the purchased assets, or lack of access to material information are contradicted by the APA. (See doc. 43, ¶¶ 121–22; 127–28; 140–41.)

A buyer who signs an AS IS clause cannot later claim reasonable reliance on oral representations about the condition of the very assets it agreed to accept without warranty. See Florida Holding 4800, LLC v. Lauderhill Mall Inv., LLC, 317 So. 3d 121 (Fla. 4th DCA 2021) (reasoning that oral representations made to a buyer are not

controlling when contradicted by a contract's "as is" provision). Accordingly, the fraud claims fail, and the breach of APA claim fails to the extent it conflicts with the APA. See Mac-Gray Services, Inc. v. DeGeorge, 913 So. 2d 630, 634 (Fla. 4th DCA 2005) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."); White Const. Co., Inc. v. Martin Marietta Materials, Inc., 633 F. Supp. 2d 1302, 1327 (M.D. Fla. 2009) ("In situations where the alleged oral representations are directly contradicted by the written terms of the contract, a merger and integration clause further supports the conclusion that reliance on the oral representations is not justifiable.").

Further, the CIM, upon which Plaintiffs themselves rely, discloses material facts that Plaintiffs claim were concealed. (Doc. 1-2, Ex. B.) For instance, the CIM states that Lawrence was "very active in the business in all capacities--He is tasked with customer interfacing, estimating, quality control, and more." (Id. at 13.) The CIM further states that Slaton was a "1099" independent contractor (id.), that the license was Lawrence's personal license (id. at 34). The CIM disclaimed any "guarantee of future performance" (id. at Disclaimer Section) and stated that recipients were "solely responsible for conducting their own assessment and due diligence at their own cost" (id.). Plaintiffs cannot claim that goodwill's personal nature was "concealed" (see doc. 43, ¶¶ 122, 127–28) when the diligence materials they received disclosed it. Any reasonable buyer purchasing a construction business named after, licensed under, and admittedly built around a single individual would understand that a substantial component of the goodwill was personal to that individual and may not be portable.

Accordingly, the APA's merger clause bars the fraud claims and the breach of APA claim to the extent they conflict with the APA's express terms.

**E. The RICO claims (Counts VIII, IX, and X) fail on multiple grounds.**

"One may be liable under the RICO statute if he uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce under section 1962(a); . . . if, while employed by or associated with such an enterprise, he conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity' under section 1962(c); or if he 'conspir[es] to violate any of the provisions of subsections (a), (b), or (c)' under section 1962(d)." Wright v. Select Portfolio Servicing, Inc., No. 8:14-CV-2298-T-30TGW, 2015 WL 419618, at *3 (M.D. Fla. Feb. 2, 2015).

"The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C., 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002). A RICO conspiracy claim requires showing that a Defendant: "(1) agreed to the overall objective of the conspiracy; or (2) agreed to commit two predicate acts." In re Takata Airbag Products Liab. Litig., 524 F. Supp. 3d 1266, 1282 (S.D. Fla. 2021). The phrase "racketeering activity" is defined as "including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses." Id.

In enacting RICO, Congress sought to provide a new tool to combat "organized crime and its economic roots." RJR Nabisco v. European Cmty., 579 U.S. 325, 355

(2016). Civil RICO is not a vehicle for dressing up an ordinary commercial dispute as organized crime. See Banco Latino Int'l v. Gomez Lopez, 95 F.Supp.2d 1327, 1333 (S.D.Fla.2000) ("RICO's civil remedy was not intended to create a new means of recovery in garden variety commercial disputes and commercial litigators cannot transform every commercial dispute into a civil RICO action.").

Each RICO count fails for multiple reasons.

**i. Plaintiffs fail to allege the existence of an enterprise.**

Plaintiffs define the alleged RICO enterprise as an "association-in-fact" consisting of all Defendants plus "related accounts, communication channels, records, customer information, financial information, business information, and business instrumentalities." (Doc. 43, ¶ 164.) An association-in-fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009).

The Complaint does not plead facts plausibly showing that Defendants functioned as a unit with a shared purpose. Instead, it alleges that Lawrence and TLE sold the business assets per the APA, Slaton and JSE provided post-closing services, and CRA later served as Lawrence's separate business vehicle. (Doc. 43, ¶¶ 166(A)–(D).) These allegations describe contractual, employment, and corporate relationships arising from a single business transaction, but they do not identify when the alleged enterprise was formed, how its members coordinated their activities, what decisions they made collectively, or facts showing that each Defendant shared the alleged

purpose of defrauding Plaintiffs. See Cisneros v. Petland, Inc., 972 F.3d 1204, 1211–13 (11th Cir. 2020) (commercial relationships and conclusory allegations did not support that the parties "shared a common purpose to defraud with the other participants of the purported association-in-fact enterprise"). At best, the FAC identifies the actors and resources allegedly involved in the underlying dispute, but does not plausibly allege that they formed an association-in-fact enterprise. Therefore, this element is absent.

**ii. Plaintiffs fail to allege a pattern of racketeering activity.**

For Counts VIII and X, to satisfy the "pattern of racketeering activity" requirement, Plaintiffs must allege that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts are related to one another; and (3) the predicate acts demonstrate a continuing nature of criminal conduct." Special Purpose, 202 F. Supp. 2d at 1347. For a RICO conspiracy claim (Count IX), Plaintiffs must allege that there was an agreement to participate in such a pattern. In re Takata, 524 F. Supp. 3d at 1282. A short-lived scheme directed toward a single, discrete objective does not satisfy this requirement. See Ferrell v. Durbin, 311 Fed. App'x 253, 257 (11th Cir. 2009) ("[I]t is clear that single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity.").

Here, Plaintiffs identify only five allegedly unauthorized electronic payments, totaling $10,444.05, made over approximately five months in connection with a single asset-purchase transaction. (See Doc. 43, ¶¶ 168, 175, 181.) The alleged acts pursued

the discrete objective of diverting or retaining transaction-related funds and benefits, and ended after five months. This does not establish a pattern of racketeering activity. See Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1267 (11th Cir. 2004) ("[I]n cases like this one, where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering . . . ."). Further, "this Circuit has determined that an alleged mail fraud scheme lasting approximately six months 'was accomplished in too short a period of time . . . to qualify it as a pattern of racketeering activity.'" Id. at 1266.

Plaintiffs also fail to plead open-ended continuity. Although they allege that Defendants' conduct "posed a continuing threat" while Defendants retained "customer information, business relationships, operating knowledge, financial information, and related business vehicles," those circumstances do not plausibly demonstrate a threat of continued racketeering activity. (Doc. 43 ¶ 170.) To do so would require them to allege either that the alleged acts were part of the defendants' "regular way of doing business," or that the illegal acts threatened repetition in the future. Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1267 (11th Cir. 2004).

The Complaint alleges neither. The only specifically identified predicate acts are five allegedly unauthorized insurance payments made over approximately five months to satisfy existing obligations allegedly owed by Lawrence and TLE. (Doc. 43, ¶ 168.) That alleged scheme had a finite objective and a natural endpoint: payment of the identified insurance obligations. Plaintiffs do not allege that the payments

continued, that Defendants intended to initiate additional payments, or that similar transfers were Defendants' regular method of conducting business.

Nor do the allegations concerning post-closing customer interference, retained information, and continued business activity establish a threat of future racketeering. Although Plaintiffs allege that Defendants continued to possess or use customer information, business relationships, operating knowledge, and business vehicles, they do not identify any future or ongoing mailing, wire transmission, fraudulent payment, or other RICO predicate arising from that conduct. (Id. at ¶ 170.) At most, those allegations describe the continuing effects of the allegedly completed asset-purchase scheme and alleged post-closing competition or interference. Accordingly, Plaintiffs fail to plead open-ended continuity.

Plaintiffs' attempt to repackage a small asset purchase dispute as an organized criminal enterprise warranting $30 million in damages is unfounded. The RICO claims do not allege a pattern of racketeering and should be dismissed.

**F. The APA's damages limitations preclude the relief sought.**

Even assuming Plaintiffs could state a claim, the APA's damages provisions contractually preclude the extraordinary relief Plaintiffs seek. Plaintiffs demand over $30 million in damages arising from a $1,016,000 asset purchase. (Id. at ¶ 190.) The APA provides that the indemnification provisions are the "**sole and exclusive remedy**" (emphasis added) of the parties for damages resulting from "a breach of any representation, warranty, covenant, or agreement . . . contained in or made pursuant

to this Agreement." (Doc. 1-2, Ex. A, § 8.1(d).) The indemnification obligation is capped at $203,000.00, with a fraud carve-out that extends the cap to only the "aggregate consideration paid by" Mason, totaling $1,016,000.00. (Id. at § 8.1(b).) The APA also provides that the parties "**waive any and all rights to any special, consequential, indirect, punitive, or exemplary damages as a result of a breach of this Agreement, whether asserted in contract, tort, or otherwise**." (Emphasis added)(Id. at § 8.10.) Accordingly, Plaintiffs' demand for $30 million-plus in damages on their manifold theories of recovery are contractually precluded by the APA on which Plaintiffs' claims are based.

**G. Count XI is not an independent cause of action.**

Count XI improperly combines requests for an accounting, constructive trust, disgorgement, record preservation, and injunctive relief. (Doc. 43 ¶¶ 185–89.) These are principally remedies, not standalone causes of action. See Zaki Kulaibee Establishment v. McFliker, 771 F.3d 1301, 1311 n.21 (11th Cir. 2014) ("an accounting is best understood as a remedy for a cause of action, not as a cause of action in its own right"); Omnia Med., LLC v. PainTEQ, LLC, No. 8:22-CV-145-VMC-TGW, 2022 WL 3139241, at *3 (M.D. Fla. Aug. 5, 2022) ("A constructive trust is a remedy, not a cause of action."); In re Wiand, No. 8:05CV1856 T27MSS, 2007 WL 963165, at *8 (M.D. Fla. Mar. 27, 2007) ("[D]isgorgement is a remedy for an unjust enrichment action, not an independent cause of action"); CHHJ Franchising LLC v. Spaulding, No. 823CV01979WFJAAS, 2024 WL 229406, at *7 (M.D. Fla. Jan. 22, 2024) ("An

injunction is a remedy, rather than a separate, standalone cause of action.”). Because Count XI does not state a cognizable claim, it must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs’ First Amended Complaint in its entirety and with prejudice, and for all further appropriate relief.

**Local Rule 3.01(g) Certificate**

Defendants certify that counsel for Defendants conferred with Plaintiffs via telephone on July 13, 2026. Plaintiffs oppose the motion.

Dated: July 13, 2026

QUARLES & BRADY LLP

By: /s/Benjamin B. Brown
Benjamin B. Brown
Florida Bar No. 13290
1395 Panther Lane, Suite 300
Naples, FL 34109
239/659-5026 Telephone
239/213-5426 Facsimile
benjamin.brown@quarles.com
dayron.crespo@quarles.com
DocketFL@quarles.com

and

Caroline J. Calavan
Florida Bar No. 1049016
Quarles & Brady LLP
101 East Kennedy Blvd., Suite 3400
Tampa, FL 33602-5195

813/384-6711 Telephone
caroline.calavan@quarles.com
kenneth.carpenter@quarles.com
cyndi.trotti@quarles.com
docketFL@quarles.com
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which sent electronic notification to the registered CM/ECF users.

Alek Mirko Mason
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, TX 77318
830-830-6374
Email: amason.litigation@gmail.com
Pro Se

Elena Yancheva Yaneva
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, TX 77318
830-830-6374
Email: amason.litigation@gmail.com
Pro Se