UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEK MIRKO MASON and
ELENA YANCHEVA YANEVA,

    Plaintiffs,

v.                                          Case No. 2:26-cv-01976-SPC-NPM

THOMAS ROGER LAWRENCE;
THOMAS LAWRENCE ENTERPRISES, INC.;
CONSTRUCTION RESOURCE ADVISORS, LLC;
JOEL DANIEL SLATON;
JOEL SLATON ENTERPRISES, INC.,

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**

**TO DISMISS FIRST AMENDED COMPLAINT (DOC. 46)** [1]

Doc. 46 should be denied and Defendants directed to answer. In their first pre-answer Rule 12 motion, Defendants represented that they would "file a responsive pleading in due course," but filed Doc. 46 instead. Rule 12(g)(2) bars the successive motion because every ground was previously available and the First Amended Complaint ("FAC") created no new ground. Plaintiffs address the merits only to show that Doc. 46 independently fails, without conceding procedural propriety.

**I. DEFENDANTS' SUCCESSIVE PRE-ANSWER RULE 12 MOTION IS**

**BARRED BY RULE 12(g)(2)**

Rule 12 requires a party making a pre-answer Rule 12 motion to consolidate the defenses and objections then available for assertion by motion. Rule 12(g)(2)

---

[1] The Court authorized a response not exceeding twenty-five pages. Doc. 49 (July 23, 2026).

provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Eleventh Circuit states the consolidation rule directly: "Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss," subject to Rule 12(h)(2). *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).[2]

Rule 12(h)(2) preserves a failure-to-state-a-claim defense, but it does not authorize Defendants to assert that defense through a second pre-answer Rule 12(b)(6) motion. Fed. R. Civ. P. 12(h)(2). *Kaleta v. City of Holmes Beach* applied that distinction directly: "Rule 12(h)(2) does not provide for a second Rule 12 motion even to raise those defenses." No. 8:22-cv-2472-CEH-JSS, ECF No. 44 at 4 (M.D. Fla. June 2, 2023). Because no answer had been filed, the court declined to treat the motion under Rule 12(c), held that it was "a successive motion that is barred by Rule 12(g)," denied it, and directed the defendant to answer. [*Id.* at 4–5]; see also *Silver Creek Farms, LLC v. Fullington*, No. 16-80353-CIV, 2017 WL 8890666, at *3–4 (S.D. Fla. May 8, 2017).

Defendants expressly invoked Rule 12(b)(3) in Doc. 12. [Doc. 12 at 1]. Granting their alternative § 1404(a) transfer request did not erase that motion or restart pre-

---

[2] *Skrtich* was overruled on other grounds by *Pearson*, which concerned the sequence for deciding qualified immunity and did not address Rule 12(g). 555 U.S. 223, 236 (2009).

2

answer motion practice. They also represented that they would "file a responsive pleading in due course under Fed. R. Civ. P. 12(a)(4)." [*Id.* at 1 n.1]. Rule 12(a)(4) governs when a responsive pleading must be served; it authorizes no second motion. Under Rules 7(a)–(b), the promised pleading was an answer. Defendants filed no answer; they filed Doc. 46, another pre-answer motion barred by Rule 12(g)(2).

The FAC did not materially change the claims' scope or theory. *Krinsk v. SunTrust Banks, Inc.* holds that "the filing of an amended complaint does not automatically revive all defenses or objections that the defendant may have waived in response to the initial complaint." 654 F.3d 1194, 1202 (11th Cir. 2011).

Defendants cannot invoke Rule 12(h)(3) merely by labeling claim-element disputes as "standing." The original Complaint alleged direct injuries to both Plaintiffs. Defendants' disputes over privity, ownership, reliance, possessory rights, and relief concern whether Plaintiffs have valid causes of action—not subject-matter jurisdiction. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Doc. 46 confirms that distinction by raising those issues under Rule 12(b)(6), not Rule 12(b)(1). [Doc. 46 at 1].

Judicial efficiency does not excuse Doc. 46. The Eleventh Circuit explains that delay is "costly to the court system, demanding more time and energy from the court and retarding the disposition of cases." *Skrtich*, 280 F.3d at 1307 n.12.

Figure 1 shows Defendants' Rule 12 election and representation concerning the responsive pleading:

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEK MIRKO MASON AND ELENA YANCHEVA YANEVA,<br>*Plaintiffs,*<br><br>v.<br><br>THOMAS ROGER LAWRENCE; THOMAS LAWRENCE ENTERPRISES, INC.; CONSTRUCTION RESOURCE ADVISORS, LLC; JOEL DANIEL SLATON; JOEL SLATON ENTERPRISES, INC.;<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:25-CV-06310 |

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Defendants Thomas Roger Lawrence, Thomas Lawrence Enterprises, Inc., Construction Resource Advisors, LLC, Joel Daniel Slaton, and Joel Slaton Enterprises, Inc. (collectively "Defendants") file this Motion to Dismiss or, in the alternative, Motion to Transfer Venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). In support thereof, Defendants show the Court the following:

### I.    Introduction

Plaintiffs' Complaint ("Complaint")[1] makes clear that this "action arises from an asset purchase transaction in which Plaintiffs acquired the operating assets of a construction business formerly owned by Defendant Thomas Roger Lawrence[.]" ECF No. 1 at ¶ 1. The relevant agreements relating to the asset purchase transaction all contain exclusive forum selection causes

---

[1] References to the Plaintiffs' Complaint do not admit any factual allegation made by Plaintiffs. Defendants will file a responsive pleading in due course under Fed. R. Civ. P. 12(a)(4).

**Figure 1.** [Doc. 12 at 1 & n.1] (highlighting added).

4

The original Complaint and exhibits supplied the basis for every substantive objection in Doc. 46:

**TABLE 1 — DOC. 46 GROUNDS AVAILABLE WHEN DOC. 12 WAS FILED**

| DOC. 46 GROUND | ORIGINAL COMPLAINT AND EXHIBITS |
| --- | --- |
| **Rules 8 and 10 —** [Doc. 46 at 7–10] | [Doc. 1 ¶¶ 73, 92, 106, 132, 147 (incorporation); collective references within ¶¶ 74–90, 93–105, 107–131]. |
| **Mason's identity —** [Doc. 46 at 10–11] | [Doc. 1 ¶ 11; Doc. 1-2 at 119 ("f/n/a Aleksandar Musulin")]. |
| **Yaneva's standing —** [Doc. 46 at 12–16] | [Doc. 1 ¶¶ 12, 27(B)–(C), 66(A), 96(B) (status, direct harm, and investigative labor); Doc. 1-2 at 3, 61 (Asset Purchase Agreement ("APA") and Independent Contractor Agreement ("ICA") parties)]. |
| **Rule 9(b) —** [Doc. 46 at 16–17] | [Doc. 1 ¶¶ 20–58, 106–131]. |
| **APA and CIM —** [Doc. 46 at 17–20] | [Doc. 1-2, Ex. A (APA §§ 4.5, 4.6, 11.8), Ex. B (Confidential Information Memorandum ("CIM")); Doc. 1 ¶¶ 20–31, 54–59, 106–131; Prayer for Relief I]. |
| **Civil RICO —** [Doc. 46 at 20–24] | [Doc. 1 ¶¶ 74–89, 93–102 (enterprise, pattern, continuity, and §§ 1962(a), (c), and (d)); ¶¶ 36–41 (same five online insurance payments)]. |

| DOC. 46 GROUND | ORIGINAL COMPLAINT AND EXHIBITS |
|---|---|
| Damages limitations — [Doc. 46 at 24–25] | [Doc. 1-2, Ex. A, APA §§ 8.1(b), 8.1(d), 8.10; Doc. 1 ¶¶ 90, 103, 126; Prayer for Relief B]. |
| Equitable remedies — [Doc. 46 at 25–26] | [Doc. 1 ¶¶ 132–154; Prayer for Relief C, E–H, L the FAC created no new basis]. |

The FAC particularized the same theories; it added no party, transaction, contract, enterprise, or matter creating Doc. 46's objections. *Sanders* likewise denied under Rule 12(g)(2) a post-transfer Rule 12(b)(6) motion following an initial Rule 12(b)(3) motion, holding that amendments providing "some additional factual context" did not revive objections that could have been raised earlier. *Sanders v. Polaris Industries, Inc.*, No. 21-cv-02055-NYW-MEH, ECF No. 68 at 3, 8–11 (D. Colo. Nov. 4, 2022). Calling Rule 8 and Rule 10 objections a "failure to cure" did not make them new. Nor did FAC ¶ 92(A)'s later Intuit and QuickBooks account-control allegations, which Doc. 46 neither cites nor relies on and Defendants may address in an answer. Doc. 46 should be denied and Defendants directed to answer.

## II. THE FAC CURES THE SHOTGUN-PLEADING DEFECT IDENTIFIED BY THE COURT

Doc. 37 identified the defect—each original count incorporated all preceding paragraphs—and instructed Plaintiffs to "incorporate or separately allege under each count only the facts that are relevant to that count." [Doc. 37 at 2]. The FAC complies: each count identifies who asserts it and against whom and incorporates

specified factual paragraphs, never a preceding count. [Doc. 43 ¶¶ 120, 126, 132, 138, 144, 150, 156, 162, 173, 180, 185].

Defendants equate length and factual overlap with shotgun pleading, but the test is whether the pleading "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). These claims arise from one asset purchase and course of conduct, so relevant facts overlap: ¶¶ 111–119 allege common causation and damages; Defendant Slaton's represented General Manager role bears on continuity and reliance; Defendant Lawrence's relationships and Architectural Review Board position bear on the nature and transferability of goodwill; and the debt-service, credit, labor, and health allegations bear on materiality, causation, and each Plaintiff's damages.

Doc. 46's claim-by-claim arguments demonstrate notice. *Pinson* found adequate understanding where "both JPMorgan Chase and the District Court understood the claims well enough to address their merits." *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019). Doc. 46 likewise identifies the claims, allegations, speakers, and conduct. Whether Plaintiffs prove the allegations and obtain relief presents merits questions, not notice defects.

The FAC also attributes conduct to each Defendant. The count captions specify the Defendants against whom each claim is asserted; ¶¶ 140–141 allege APA breaches by Defendant Lawrence and Defendant TLE; ¶¶ 146–147 allege ICA breaches by Defendant Slaton and Defendant JSE; ¶ 153 separates the alleged

interference by Defendant Lawrence and Defendant TLE, Defendant Slaton and Defendant JSE, and Defendant CRA; and ¶¶ 166(A)–(D) and 176(A)–(D) identify each Defendant's RICO role. Although ¶¶ 13 and 29 use collective references, the surrounding allegations identify the actors and conduct; repeating every name would add redundancy without improving notice. [Doc. 43 ¶¶ 11–14, 28–30]. Doc. 46 acknowledges that the FAC attributes statements "to only Lawrence" and "to Lawrence and Slaton together." [Doc. 46 at 17].

The FAC corrected Doc. 37's defect and gives adequate notice of every claim and its grounds. Doc. 46's renewed shotgun-pleading challenge should be denied.

## III. DEFENDANTS' IDENTITY AND STANDING ARGUMENTS FAIL

### A. Mason's identity as the APA's Buyer Principal and signatory was pleaded from the outset, and Defendants' first motion proceeded on that identity.

On a Rule 12(b)(6) motion, the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). The FAC's incorporated written instruments are part of the pleading. Fed. R. Civ. P. 10(c).

The original Complaint alleged that Mason is "the same individual formerly known as Aleksandar Musulin," executed the APA under that former name, and legally changed his name upon naturalization as a United States citizen on June 20, 2025. [Doc. 1 ¶ 11]. Defendants' first motion nevertheless captioned Plaintiff as "ALEK MIRKO MASON" (See Figure 1) while invoking the APA identifying

8

Aleksandar Musulin as the Buyer Principal. [Doc. 12 at 1; Doc. 1-2 at 3, 28].

Defendants thus proceeded on Mason's identity before filing Doc. 46, confirming that this objection was previously available.

The FAC independently establishes that identity by expressly incorporating Exhibits A through G. [Doc. 43 ¶ 7(A)]. The APA identifies Aleksandar Musulin individually as the "Buyer Principal," defines him and TLC collectively as the "Buyer Parties," and bears his separate signature "as an individual." [Doc. 1-2 at 3, 28]. Exhibit G identifies Plaintiff Alek Mirko Mason as "f/n/a Aleksandar Musulin" [*Id.* at 119]. The pleadings and incorporated exhibits therefore identify one individual—Plaintiff Mason—under his former and present legal names. Defendants may dispute that fact in their answer, but it supplies no basis for dismissal.

## B. Yaneva alleges injuries sustained directly by her and asserts no derivative claims.

Article III requires an injury in fact fairly traceable to the challenged conduct and redressable by a favorable decision; "economic harm is a quintessential injury in fact." *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1206–07 (11th Cir. 2019). Counts I and III through VI are asserted only by Mason. [Doc. 43 ¶¶ 120, 132, 138, 144, 150]. Arguments that Yaneva was not an APA or ICA party, did not possess the Customer Funds, and did not own TLC's business relationships therefore address claims she does not assert. Yaneva asserts Count II based on post-Closing reliance during record reconstruction; that alleged fraud supplies Count VII's underlying tort.

9

She asserts Counts VIII through XI only for her own legally recoverable injuries. [*Id.* ¶¶ 126, 130–131, 156–161, 171–172, 178–179, 183–187].

The FAC alleges impaired access to TLC's systems, deletion of materials maintained by Yaneva, substantial unpaid labor, and additional direct financial harm traceable to Defendants' alleged conduct. [*Id.* ¶¶ 92–93, 111, 112(C), 130–131]. The RICO counts limit Yaneva's recovery to business-or-property injuries she personally proves. [*Id.* ¶¶ 171–172, 178–179, 183–184].

Neither Yaneva's lack of TLC ownership nor her nonparty status under the transaction agreements defeats injuries sustained directly by her. RICO's business-or-property requirement concerns "the kinds of harm for which the plaintiff can recover." *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025). References to health effects, stress, and household disruption do not negate her economic injuries; whether every requested damages category is recoverable presents a claim-specific merits question, not an Article III defect.

Doc. 46 establishes neither an identity defect as to Mason nor an Article III standing defect as to either Plaintiff.

## IV. THE FAC PLEADS FRAUD WITH PARTICULARITY UNDER RULE 9(b)

Rule 9(b) requires "the who, what, when[,] where, and how" of the fraudulent conduct: the precise statements, documents, or misrepresentations; their time, place, and responsible person; how they misled Plaintiffs; and what Defendants gained. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025). Intent and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). The FAC satisfies each requirement.

10

The FAC identifies the speakers, their entities, and their representations. Defendant Lawrence and Defendant TLE acted through Lawrence's statements, authorized broker-prepared sale materials, and transaction documents; Defendant Slaton and Defendant JSE acted through Slaton's statements and the ICA executed by Defendant Slaton and Defendant JSE. [Doc. 43 ¶¶ 7(F)–(I), 8–12, 23–30]. The representations concerned transferable goodwill; one to two serious new-customer inquiries per week; an average job value of approximately $150,000; Slaton's represented General Manager, licensing, and operational roles; Lawrence's retirement and relocation; clean accounting records; and post-Closing continuity. [*Id.* ¶¶ 9–16, 23–30, 37–50, 71–75]. Doc. 46 itself distinguishes statements attributed "to only Lawrence" from those attributed "to Lawrence and Slaton together." [Doc. 46 at 17]. That acknowledgment confirms Defendants understood which statements the FAC attributes to each speaker.

The FAC alleges when, where, and how the representations occurred: during the 2024 sale process and before the December 12, 2024 Closing, through the CIM, transaction documents, personal statements, and a telephone call in which Slaton discussed his licensing progress. [Doc. 43 ¶¶ 10, 16(A)–(B), 23–30]. It further alleges that Plaintiffs discovered within weeks after Closing that the represented customer pipeline did not exist and that Lawrence remained in the market, formed Defendant CRA, and obtained a new local telephone number through which he maintained customer contact. [*Id.* ¶¶ 14, 16(C)–(E)].

11

The post-Closing concealment is pleaded with comparable detail. The FAC identifies five unauthorized electronic insurance payments totaling $10,444.05 and Slaton's allegedly false explanation that the money would be returned through an insurance audit. [*Id.* ¶¶ 80–82]. It identifies the date, amount, participants, charges, circumstances, and concealed QuickBooks arrangement associated with a January 17, 2025 invoice for $13,165.54. [*Id.* ¶ 85]. It also alleges that Lawrence and Slaton "retained, diverted, converted, and concealed Customer Funds and other money presently identified and estimated at more than $255,000.00, subject to further accounting, reconciliation, discovery, and proof." [*Id.* ¶ 60]. The FAC identifies reconciliation requests, misleading spreadsheets and explanations, and withheld accounting and project information. [*Id.* ¶¶ 61–66, 71–75].

The FAC explains that the representations and concealment induced Mason to close, continue funding and operating the Purchased Operation, and delay emergency action, while causing Yaneva to undertake post-Closing investigation and reconstruction efforts. It also identifies the value Defendants allegedly obtained, the funds they allegedly retained, and the resulting damages. [*Id.* ¶¶ 75, 111–119, 124–125, 129–131].

Doc. 46 disregards the detailed allegations each count incorporates. [*Id.* ¶¶ 120, 126]. Rule 9(b) does not require Plaintiffs to repeat every incorporated fact inside the concluding paragraphs of each count. Accordingly, the Court should deny Doc. 46's request to dismiss Counts I and II under Rule 9(b).

### V. THE APA AND CIM DO NOT DEFEAT COUNTS I, II, OR IV

12

Defendants argue that the APA's inspection, "as is," and integration provisions bar Plaintiffs' fraud and contract claims. [Doc. 46 at 17–20]. Applying Florida law, the Eleventh Circuit held: "The 'as is' clause and the rest of the Purchase Agreement in this case may constitute evidence against plaintiff's fraud allegations, but plaintiff's claims are not precluded as a matter of law." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028–29 (11th Cir. 2017). The APA selects Florida law. [Doc. 1-2 at 26].

APA § 11.8 is an ordinary integration clause; it does not disclaim liability for fraudulent inducement, waive concealment claims, or make the APA incontestable for fraud. [*Id.* at 27]. APA § 4.5 limits the Seller Parties' liability for contractual breach only "to the extent that the Buyer knew of such breach as of the Closing Date," while APA § 4.6 states that the Buyer Parties had "no knowledge" of any Seller-Party breach at Closing. [*Id.* at 15]. APA § 4.5's final proviso uses "Buyer Parties" where its context plainly indicates "Seller Parties"; otherwise, Buyer misconduct would eliminate the Seller Parties' own "AS IS" protection. Read as intended, the proviso expressly makes the "AS IS" sentence inapplicable to knowing misrepresentation or nondisclosure by the Seller Parties—the conduct alleged in the FAC. Read literally, it provides no disclaimer of Seller-Party fraud. Under either reading, § 4.5 cannot bar the claims at the pleading stage. [Doc. 43 ¶¶ 13–16, 19, 29, 41–51, 60–75].

Defendants' construction would also erase the APA's specific representations and duties. Defendant Lawrence and Defendant TLE jointly and severally represented at

13

Closing the accuracy of statements concerning financial records, customer relationships and information, the Acquired Assets, and accounts receivable. [Doc. 1-2 at 5–8, 13–15]. The APA requires transition assistance, accurate WIP disclosure, treatment of billed but unearned amounts as Buyer prepayments, reconciliation, and record access. [*Id.* at 23–25]. Count IV identifies breaches of those provisions. [Doc. 43 ¶¶ 138–143]. A general "as is" provision does not eliminate specific duties in the same agreement.

The CIM says Viking prepared it from owner-supplied information without audit. [Doc. 1-2 at 33]. Its disclaimer does not authorize false source information or concealment. The FAC alleges misrepresentations of existing facts and intentions—not projections—concerning the customer pipeline, goodwill, Defendant Slaton's role, Customer Funds, WIP, AR, and Defendant Lawrence's intent to remain active.

The CIM stated: "Mr. Lawrence has his sights set on retirement and spending quality time with his wife, children, and grandchildren." It promoted a high-end customer base, included customer lists and goodwill, and represented that the General Manager—identified in the FAC as Defendant Slaton—"collaborates closely with Thomas Lawrence" and was "encouraging the transition of the business to a new owner." [Id. at 38, 45, 49, 59]; [Doc. 43 ¶¶ 24–26, 30].

The CIM labeled the General Manager position "Management (1099)" and stated that the business operated under Defendant Lawrence's license. [Doc. 1-2 at 49, 59]. It did not disclose the alleged mismatch between that structure and the represented post-Closing role. [Doc. 43 ¶¶ 10, 28–30]. Whether those disclosures corrected or

14

negated the alleged misrepresentations presents a factual question, not a basis for dismissal. The CIM also restricted verification by barring direct contact with Defendant TLE's managers, employees, customers, suppliers, vendors, and competitors and requiring approval and accompaniment for site visits. [Doc. 1-2 at 34–35]. Under Florida law, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

The APA and CIM do not defeat the pleaded fraud claims or Count IV as a matter of law. The Court should deny Doc. 46's request to dismiss Counts I, II, and IV on those grounds.

## VI. COUNTS VIII, IX, AND X PLAUSIBLY ALLEGE AN ASSOCIATION-IN-FACT ENTERPRISE AND A PATTERN OF RACKETEERING ACTIVITY

Doc. 46 challenges the existence of an enterprise and a pattern of racketeering activity and asserts that Count IX does not allege an agreement. [Doc. 46 at 20–24].

At this stage, the Court accepts "the complaint's factual allegations as true" and construes them "in the light most favorable to the plaintiffs." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025). For the elements challenged here, § 1962(c) requires operation or management of an enterprise through a pattern of racketeering activity involving at least two predicate acts, causation, and injury to business or property. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). A pattern requires related predicate acts that amount to or threaten continued criminal

activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239–43 (1989). The FAC plausibly alleges those elements.

### A. The FAC plausibly alleges an association-in-fact enterprise.

An association-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It need not have a hierarchical structure, fixed roles, a name, regular meetings, or established rules. [*Id.* at 948].

The FAC pleads each required feature. Paragraph 164 identifies the associated persons and entities as Defendant Lawrence, Defendant TLE, Defendant Slaton, Defendant JSE, and Defendant CRA after its formation. The accounts, communication channels, records, information, and business instrumentalities listed in that paragraph are the means allegedly used by the associated Defendants; they are not alleged to be additional members of the enterprise.

Section 1962(c) requires a RICO person to be distinct from the enterprise, but a defendant may also be a member of a broader association-in-fact enterprise. *United States v. Goldin Industries, Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000). No Defendant is alleged to be the enterprise under another name; each allegedly participates in the enterprise comprising all five Defendants. Defendant Lawrence and Defendant Slaton are natural persons legally distinct from Defendant TLE, Defendant CRA, and Defendant JSE, which are separately organized legal entities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 163, 166 (2001).

16

The FAC alleges a common purpose: inducing the purchase, retaining and diverting Customer Funds and operating funds, concealing financial and operational information, preserving and reclaiming customer relationships and goodwill, and interfering with the Purchased Operation. [Doc. 43 ¶¶ 164, 169, 174–176]. It also alleges relationships and roles. Defendant Lawrence allegedly controlled the sale process, Defendant TLE, customer relationships, and later Defendant CRA. Defendant TLE supplied the transaction, WIP, AR, accounting, Customer Funds, and customer-relationship infrastructure. Defendant Slaton allegedly controlled financial activity, project and customer information, communications, operating-account activity, and TLC systems through Defendant JSE. Defendant JSE served as his contracting, payment, and access vehicle. Defendant CRA allegedly became Defendant Lawrence's additional post-Closing business vehicle. [*Id.* ¶¶ 165–166(D)].

The alleged association existed during the pre-Closing inducement and financial transmissions, continued through the post-Closing diversion and concealment, and later operated through Defendant CRA and continuing control over customer, business, financial, and electronic-account information. [*Id.* ¶¶ 15–21, 59–98, 164–170]. These allegations plead purpose, relationships, coordination, and longevity. Doc. 46's demand for a formal formation date, collective decision-making process, or additional organizational structure imposes requirements Boyle expressly rejects. Unlike the conclusory common-purpose allegations in *Cisneros*, the FAC identifies each Defendant's alleged role and the coordinated conduct through which the common objectives were pursued. *Cisneros*, 972 F.3d at 1212–14.

17

## B. The FAC alleges multiple related wire-fraud predicates.

Wire fraud requires an intentional scheme to defraud another of money or property and use of interstate wires to further that scheme. *Otto Candies*, 137 F.4th at 1195–96. Rule 9(b) governs the circumstances of the alleged predicate acts, but it does not require Plaintiffs to prove those acts at the pleading stage. [*Id.* at 1200].

Doc. 46's assertion that the FAC identifies "only five" payments disregards the pleading and incorporated exhibits. Paragraph 167 alleges multiple related mail- and wire-fraud predicates; paragraph 168 states that those predicates "included, without limitation," the five insurance payments; and paragraph 7(A), incorporated into Count VIII, incorporates Exhibits A through G. The incorporated APA required payment of the Cash Purchase Price by wire and provided for the electronic exchange of Closing signatures by email; Exhibit D documents three successive WIP and AR email transmissions within twenty-four hours before Closing. [Doc. 1-2 at PageID 50–51, 116–128]. Exhibit E labels its examples "illustrative and non-exhaustive"; the FAC supplies the defendant-specific attribution and alleges that Defendant Lawrence and Defendant Slaton retained, diverted, converted, and concealed Customer Funds and other money presently identified and estimated at more than $255,000.00, subject to further accounting, reconciliation, discovery, and proof. [Doc. 43 ¶¶ 60–61, 80–82; Doc. 1-2 at PageID 130].

The Small Auto Condo Buildout supplies a documented example. Defendant TLE received a $34,528.64 wire as the ten-percent customer deposit on October 31, 2024. [Doc. 1-2. at PageID 131, 137]. Within twenty-four hours before Closing,

18

Defendant Slaton electronically transmitted three successive WIP schedules from an email account bearing Defendant Lawrence's name at Defendant TLE's domain. The December 11, 2024, 10:15 a.m. version reported the project as 0% complete and 10% billed. The December 12, 2024, 8:48 a.m. version changed the completion figure to 10%, and the 9:27 a.m. final Closing version retained that figure. [*Id.* at PageID 116, 118, 120, 123–124, 127–128]. Plaintiffs allege that the changed completion figure was false and concealed an unearned customer prepayment for work TLC later performed. The permit was not issued until April 29, 2025, and March 2025 photographs depict the unit in its undisturbed condition. [*Id.* at PageID 130, 138–142]. APA § 10.10(a) required billed but unearned amounts to be reclassified as prepayments and transferred to the Buyer. [*Id.* at PageID 70].

The FAC separately identifies five unauthorized electronic payments of $2,088.81 on February 4, March 3, March 31, May 5, and June 6, 2025, totaling $10,444.05. Plaintiffs allege that Defendant Slaton initiated those payments from TLC's operating account without authorization to pay Defendant Lawrence's and Defendant TLE's separate liability-insurance obligations and then falsely represented that an insurance audit would reimburse the money. [Doc. 43 ¶¶ 80–82, 168(A)–(C); Doc. 1-2 at PageID 130, 144, 148, 152, 156]. These allegations identify the participants, transmissions, dates, amounts, alleged falsity, methods, and resulting benefits.

The alleged predicates are related because they share participants, victims, purposes, methods, and results: electronic communications and financial systems

19

allegedly were used to obtain and retain money, conceal its treatment, deprive Plaintiff Mason and TLC of operating capital and purchased goodwill, and benefit participants in the alleged enterprise. [Doc. 43 ¶ 169; *H.J. Inc.*, 492 U.S. at 239–40].

**C. The FAC plausibly alleges open-ended continuity.**

Open-ended continuity exists when the alleged predicates threaten repetition or form part of an ongoing entity's regular way of conducting its affairs. *H.J. Inc.*, 492 U.S. at 241–43.

Doc. 46 defines the alleged scheme too narrowly as five payments made solely to satisfy finite insurance obligations. The FAC alleges broader objectives and conduct: pre-Closing electronic inducement and altered financial disclosures; post-Closing retention of Customer Funds, repeated electronic withdrawals, concealment, and customer interference; and continued use of Defendant TLE, Defendant JSE, and later Defendant CRA to retain information and preserve and reclaim customer relationships, goodwill, and business opportunities. [Doc. 43 ¶¶ 15–21, 59–98, 164–170]. The alleged conduct therefore did not possess the natural endpoint Defendants assign to it.

The pleaded facts also extend beyond the identified payments. Defendant Slaton's engagement with TLC ended on August 18, 2025. [Doc. 43 ¶ 103]. Intuit notifications received in 2026—after service and preservation notice to Defendants—revealed that post-termination administrative control persisted: Defendant Slaton was shown as TLC's primary account contact and administrator, two-factor authentication remained tied to his personal mobile device, and Defendant

20

Lawrence's personal email was later designated as the controlling account contact. [*Id.* ¶ 92(A)]. Paragraph 92(B) further alleges that Defendant Slaton installed, caused to be installed, or maintained anti-spyware or similar software on a TLC-owned computer without authorization, impairing TLC's ability to monitor, access, review, preserve, or reconstruct activity on its own systems. [*Id.* ¶ 92(B)]. Plaintiffs rely on these allegations as evidence of continuing post-termination control over TLC's financial information, credentials, and electronic systems—not as additional completed predicate acts. They support the reasonable inference that Plaintiffs never obtained exclusive control over TLC's accounting environment and that Defendant Lawrence and Defendant Slaton maintained access and the means through which similar conduct could recur.

*Jackson* does not support dismissal. There, the complaint characterized the settlement scheme as a unique, first-time occurrence and supplied no facts supporting future fraud. *Jackson*, 372 F.3d at 1266–67. Here, the FAC alleges predicate conduct crossing Closing, continuing activity through multiple entities, electronic systems, and customer relationships, and retained access and means through which similar conduct could recur. At the pleading stage, those allegations plausibly establish the specific threat of repetition that *Jackson* found absent.

## D. Count IX alleges an agreement, and Doc. 46 supplies no independent basis to dismiss Count X.

Rule 8(a), rather than Rule 9(b), governs the agreement element of a RICO-conspiracy claim. Direct evidence of an agreement is unnecessary because the

21

agreement may be inferred from the participants' conduct and circumstantial evidence of the scheme. *Otto Candies*, 137 F.4th at 1201–03.

Count IX alleges that Defendant Lawrence, Defendant TLE, Defendant Slaton, and Defendant JSE agreed that members would conduct the enterprise's affairs through a pattern of racketeering activity, and that Defendant CRA later knowingly participated as Defendant Lawrence's post-Closing construction-consulting vehicle for continuing the enterprise's objectives. [Doc. 43 ¶¶ 174–176(D)]. Paragraph 175 identifies the coordinated conduct, paragraph 176 and subparagraphs 176(A)–(D) allege each Defendant's knowledge and role, and paragraph 177 alleges that at least one conspirator committed, facilitated, or agreed that another would commit at least two predicate acts. The pre-Closing financial transmissions, post-Closing fund activity, continuing customer and system access, mutual benefits, and defendant-specific roles provide factual grounds from which the alleged agreement may be inferred.

Count X alleges that Defendants used, invested, received, retained, or benefited from racketeering income, proceeds, and value and that this use or investment caused injury distinct from the underlying predicate acts by supporting continuing business vehicles and displacing Plaintiff Mason and TLC from the purchased goodwill and customer base. [*Id.* ¶¶ 181–184]. Doc. 46 presents no independent challenge to those allegations; its requested dismissal of Count X rests on the same enterprise-and-pattern arguments addressed above.

22

The FAC therefore plausibly alleges the enterprise, related predicates, open-ended continuity, conspiracy agreement, and use or investment challenged by Doc. 46. The Court should deny Doc. 46 as to Counts VIII, IX, and X.

## VII. THE APA'S DAMAGES PROVISIONS DO NOT SUPPORT DISMISSAL OR A CASE-WIDE CAP

Doc. 46 treats Article 8 as a ceiling on every claim against every Defendant. Its text does not support that construction. Section 8.1(b) limits the "obligations of indemnity" of Defendant Lawrence and Defendant TLE. Section 8.1(d) makes Article 8 exclusive only for Losses "for a breach of any representation, warranty, covenant or agreement" of the Seller Parties contained in or made pursuant to the APA. Section 8.10(a) addresses damages incurred "as a result of a breach of this Agreement." Although § 8.1(b) mentions fraud, it does so within an indemnity provision; it does not state that a party fraudulently induced to execute the APA relinquishes independent fraud claims or federal statutory remedies. Nor do these provisions extend contractual protection to Defendant Slaton, Defendant JSE, or Defendant CRA.

Count I alleges that Defendants' pre-Closing misrepresentations induced Plaintiff Mason to execute and fund a transaction he would not otherwise have entered. [Doc. 43 ¶¶ 121–125]. Fraudulent inducement is an independent tort requiring proof of conduct distinct from a contractual breach. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239–40 (Fla. 1996).

23

Florida law further provides that a party cannot contract against liability for its own fraud. *Mankap Enterprises, Inc. v. Wells Fargo Alarm Services*, 427 So. 2d 332, 333–34 (Fla. 3d DCA 1983). Applying that rule at the pleading stage, the Middle District of Florida held that fraud is not subject to contractual exculpatory clauses and denied dismissal based on the damages-limitation provision. *Whitney National Bank v. SDC Communities, Inc.*, No. 8:09-cv-1788-EAK-TBM, 2010 WL 1270264, at *4 (M.D. Fla. Apr. 1, 2010).

The APA also does not state that its indemnity provisions limit federal RICO liability. Counts VIII through X allege related pre-Closing and post-Closing racketeering conduct involving all five Defendants. [Doc. 43 ¶¶ 164–184]. Civil RICO independently requires recovery of threefold the proven injury to business or property. 18 U.S.C. § 1964(c). Defendants identify no APA language expressly relinquishing that federal remedy.

Defendants therefore have not established that any APA damages provision defeats any claim as a matter of law. At most, those provisions may later present questions concerning particular categories of contract damages. They provide no basis to dismiss Plaintiffs' independent fraudulent-inducement or RICO claims, no basis to limit claims against Defendants who are not Seller Parties, and no basis to impose a case-wide damages cap. Doc. 46 should therefore be denied in all respects founded upon the APA's damages provisions.

## VIII. COUNT XI PROPERLY REQUESTS EQUITABLE RELIEF

24

Defendants attack Count XI as though it alleges independent liability. [Doc. 46 at 25–26]. It does not: Counts I through X allege liability, and Count XI identifies resulting equitable relief under Fed. R. Civ. P. 8(a)(3).

Florida law permits an accounting when a transaction is complicated and the legal remedy is inadequate. *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014). Defendant Slaton and Defendant JSE allegedly created, used, and maintained TLC's corrupted and commingled accounting structure; Defendant Lawrence and Defendant TLE allegedly retained, permitted, and benefited from it; and each of those Defendants allegedly failed to disclose, correct, and separate it. [Doc. 43 ¶¶ 74, 74(A)]. Defendant CRA allegedly participated in and benefited from Defendant Lawrence's use of it for post-Closing customer access and economic activity connected to the Purchased Operation. [*Id.* ¶ 166(D)]. Financial, customer-payment, and QuickBooks records are allegedly needed to trace resulting funds and benefits, plausibly supporting an accounting. [*Id.* ¶¶ 186–187].

Other remedies depend on proof of the underlying claims and traceable assets or benefits. [*Id.* ¶¶ 186–189]. The APA expressly permits injunctive relief, "in addition to any other remedies and damages available," for Article 9 violations. [Doc. 1-2 at 22, APA § 9.5(b)]. Paragraph 189 limits relief to legally recoverable claims and damages.

Count XI therefore consolidates remedies arising from Counts I through X. The Court should deny Doc. 46 as to Count XI.

### IX. CONCLUSION

25

Doc. 46 fails procedurally and on the merits. Rule 12(g)(2) bars Defendants' second pre-answer motion because its defenses were previously available, Defendants represented that an answer would follow, and the FAC did not materially alter the case's scope or theory. Addressing the merits does not concede that the successive motion is procedurally permitted. Accepting the allegations as true, the FAC cures Doc. 37's incorporation defect and plausibly alleges every challenged claim and remedy, including Defendant Lawrence's and Defendant Slaton's coordinated conduct through Defendant TLE, Defendant JSE, and Defendant CRA. The Court should deny Doc. 46 in its entirety and direct Defendants to answer the FAC.

Respectfully submitted,

_____
Alek Mirko Mason
Plaintiff, pro se
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email: amason.litigation@gmail.com

_____
Elena Yancheva Yaneva
Plaintiff, pro se
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email: amason.litigation@gmail.com

26

## CERTIFICATE OF SERVICE

Plaintiffs certify that, on August 5, 2026, a true and correct copy of the foregoing was served by United States Mail upon the following counsel of record:

Caroline J. Calavan
Quarles & Brady LLP
101 East Kennedy Boulevard
Suite 3400
Tampa, Florida 33602

Benjamin B. Brown
Quarles & Brady LLP
1395 Panther Lane, Suite 300
Naples, Florida 34109

William Kenneth Grubb
McGinnis Lochridge
609 Main Street, Suite 2800
Houston, Texas 77002

Melanie Hill Cruthirds
Liskow
1001 Fannin Street, Suite 1800
Houston, Texas 77002

_____
Alek Mirko Mason

_____
Elena Yancheva Yaneva

27

Alek Mirko Mason & Elena Yancheva Yaneva

Plaintiffs, pro se

14132 FM 1097 Road West

Suite 300 PMB 1030

Willis, Texas 77318

Telephone: (830) 830-6374

Email: amason.litigation@gmail.com

August 5, 2026

Clerk of Court

United States District Court

Middle District of Florida

Fort Myers Division

2110 First Street

Fort Myers, Florida 33901

**Re: Mason et al. v. Lawrence et al.**

**Case No. 2:26-cv-01976-SPC-NPM**

Dear Clerk:

Enclosed for filing is Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss First Amended Complaint (Doc. 46).

Thank you.

Respectfully,

_____          _____

Alek Mirko Mason                         Elena Yancheva Yaneva

Plaintiff, pro se                             Plaintiff, pro se

Enclosure